**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

DEBORAH M. HURST,

            Plaintiff,

vs.                                          Case No. 6:16-cv-122-Orl-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

            Defendant.
_____/

## **OPINION AND ORDER**[2]

### **I. Status**

Deborah M. Hurst ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of mental impairments (including anxiety; depression; and post traumatic stress disorder), and physical impairments (including high blood pressure; muscle spasms and other problems with her back and spine; and problems with her right knee, right elbow, and right hand). See Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed June 22, 2016, at 78, 88, 175. On March 29, 2012, Plaintiff filed an application for DIB, alleging an onset disability

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed June 22, 2016; Reference Order (Doc. No. 15), signed June 22, 2016 and entered June 23, 2016.

date of December 3, 2008. Tr. at 160-61. Plaintiff's application was denied initially, Tr. at 78-86, 87, 98-102, and on reconsideration, Tr. at 88-96, 97, 106-10.

On February 13, 2014, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 39-76. On June 5, 2014, the ALJ issued a Decision finding Plaintiff not disabled from the alleged onset disability date through the date last insured. Tr. at 12-22. Plaintiff then requested review by the Appeals Council. Tr. at 7-8. The Appeals Council accepted additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 258-68 (brief). On December 3, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On January 25, 2016, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal. First, "[w]hether the ALJ erred in finding that [Plaintiff] had the residual functional capacity [("RFC")] to perform essentially all medium work except that [she] would be limited to performing simple, routine, repetitive tasks, or unskilled work." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 17; "Pl.'s Mem."), filed August 17, 2016, at 13.[3] Second, "[w]hether the ALJ's determinations were based on substantial evidence." Id. On November 21, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.")

---

[3] Pl.'s Mem. contains unnumbered pages. Citations to it follow the pagination assigned by the Court's electronic filing system (CM/ECF).

addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-22. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of December 3, 2008 through her date last insured of September 30, 2010." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: bilateral carpal tunnel syndrome status post release[;] chondromalacia of medial compartment status

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

post partial medial and lateral meniscectomy of the right knee; right medical epicondylitis status post surgery; affective disorder; and anxiety disorder." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined that, "through the date last insured, [Plaintiff] had the [RFC] for medium work activity as defined in the regulations, 20 CFR [§] 404.15[6]7(c), except as follows: limited to the performance of simple, routine repetitive tasks, or unskilled work." Tr. at 16 (emphasis omitted). At step four, relied on the testimony of the VE to find that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work" as an "electric motor winder." Tr. at 20 (emphasis, italics, and citation omitted). At step five, the ALJ considered Plaintiff's age ("53 years old . . . on the date last insured"), education ("limited education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find that through the date last insured, Plaintiff was capable of performing work that existed in significant numbers in the national economy. Tr. at 20-21 (some emphasis omitted). Namely, the ALJ identified representative jobs as "hand packager," "dining room attendant," and "laborer, stores." Tr. at 21 (italics omitted). The ALJ concluded that Plaintiff "was not under a disability . . . at any time from December 3, 2008, the alleged onset date, through September 30, 2010, the date last insured." Tr. at 22 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

Plaintiff contends the ALJ erred in formulating the RFC and consequently rendered a Decision that is not supported by substantial evidence. See Pl.'s Mem. at 13-23. Within these broad contentions, Plaintiff focuses on the ALJ's assignment of medium work with

additional restrictions; on the opinion of Homi Cooper, M.D., regarding the effects of Plaintiff's limitations; and on the ALJ's discrediting of Plaintiff's subjective complaints of pain to the extent that the complaints are inconsistent with the RFC determination. See id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

The Regulations establish a "hierarchy" among medical opinions[5] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors

---

[5] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of [any] treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore, 405 F.3d at 1212; Lewis, 125 F.3d at 1440.  "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Here, Plaintiff alleges that the ALJ erred in assigning her RFC.  Pl.'s Mem. at 14-23. As noted, the ALJ restricted Plaintiff's RFC to "medium work activity as defined in the regulations, 20 CFR [§] 404.15[6]7(c),[6] except as follows: limited to the performance of

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

simple, routine, repetitive tasks, or unskilled work." Tr. at 16.  Importantly, the ALJ correctly focused on a narrow time period for purposes of determining whether Plaintiff met her burden of proving she was disabled: December 8, 2008 (the alleged disability onset date) through September 30, 2010 (the last date upon which Plaintiff was insured for DIB).[7]  As Defendant points out, see Def.'s Mem. at 7, there is limited medical evidence in the administrative transcript that sheds light on this time period, see Tr. at 293-337, 341-57, 400, 405-07.

Regarding Plaintiff's RFC during the relevant time period, Plaintiff complains that "the record is devoid of any [RFC] assessments performed by any medical providers at the bequest of the Social Security Administration." Pl.'s Mem. at 15.  As was noted by the single decision maker who initially evaluated Plaintiff's claim, "in order to properly adjudicate this case[, the Administration] would need a physical exam prior to 09/30/2010." Tr. at 81.  Such a physical examination simply does not exist as it relates to Plaintiff's specific limitations prior to that date.

What does exist in the administrative transcript from a medical source that sheds light on Plaintiff's limitations during the time period at issue is a letter from Homi S. Cooper, M.D. Tr. at 326-27.  Dr. Cooper evaluated Plaintiff in a treatment role on two occasions: September 15, 2009 and October 9, 2009. Tr. at 333, 326.  Plaintiff was referred to Dr. Cooper by Vocational Rehabilitation Services, see Tr. at 333, where Plaintiff was being

---

[7] Even though the ALJ focused on this time period, the Decision makes clear that she considered all medical evidence, even that which significantly post-dated the date last insured. See Tr. at 18 (noting "that there is evidence showing that [Plaintiff] received treatment for her impairments after the expiration date of her date last insured" and "many of the medical records relate to [Plaintiff's] conditions and treatment after her date last insured, which is outside the period at issue in th[e D]ecision").

-9-

treated for the majority of her physical ailments during the relevant time period, see Tr. at 58.[8] After the first evaluation, Dr. Cooper requested "EMG and nerve conduction studies of both upper extremities to rule out right or left cervical radiculopathy and bilateral peripheral nerve entrapment mononeuropathies." Tr. at 335. He further requested "MRIs of the cervical spine, low back and right knee." Tr. at 335.

Plaintiff followed up with Dr. Cooper after obtaining the requested imaging and other studies. Tr. at 326. After the second visit, Dr. Cooper wrote:

> Referral: At this stage, I have recommended that she be seen by Dr. John Hermansdorfer for bilateral carpal tunnel decompression as she states that splints have not helped her.
>
> For the right knee, I will refer her to Dr. Robert Cooper for his evaluation and management.
>
> For the cervical and lumbar spines, nothing further needs to be done. She can do some stretching exercises at home.
>
> Limitations: <u>Once the carpal tunnels and the right knee have been treated, she would have no significant limitations</u>.

Tr. at 326 (some emphasis omitted, other emphasis added). Dr. Cooper then went on to detail the limitations that Plaintiff had at that time (pre surgery), including that she could "lift and carry frequently up to 10 pounds and occasionally up to 15 to 20 pounds for short

---

[8] Plaintiff contends that the ALJ must have confused Dr. Homi Cooper with Dr. Robert Cooper because, according to Plaintiff, Dr. Homi cooper did not "treat[]" Plaintiff as the ALJ found. Tr. at 18; see Pl.'s Mem. at 15-16. Rather, according to Plaintiff, "[t]he physician that treated [her] and performed one of her many surgeries was Dr. <u>Robert</u> Cooper." Pl.'s Mem. at 15 (citing Tr. at 322). The administrative transcript, however, reflects that Dr. Homi Cooper is a "treating source" in that he did treat Plaintiff on two occasions, albeit in a consultative role for Vocational Rehabilitation Services. See Tr. at 333; 20 C.F.R. § 404.1527(a)(2) (stating that "[t]reating source means your own acceptable medical source who provides you, or has provided you, with medical treatment <u>or evaluation</u> and who has, or has had, an ongoing treatment relationship with you" and that a person has "an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [the person] see[s], or ha[s] seen, the source with <u>a frequency consistent with accepted medical practice for the type of treatment and/or evaluation</u> required for [the person's] medical condition(s)") (emphasis added).

distances," and that she could "reach, handle, feel, grasp and finger on a repetitive basis." Tr. at 327.

The administrative transcript reflects that, indeed, Plaintiff underwent carpal tunnel release surgeries in January and July 2010. Tr. at 315-17, 296. Plaintiff was also treated for the problems with her right knee, and she underwent surgery for it in late 2009. Tr. at 319-25, 331-32. Notably, at an appointment with Miguel Rivera, M.D. on February 10, 2010, Plaintiff reported that she had undergone "two surgeries, right knee and right hand" and that "[p]ost-operatively she has done well and she reports feeling much better." Tr. at 345.

The ALJ recognized Dr. Cooper's "assessment regarding [Plaintiff's] functional limitations after treatment for her conditions" and assigned it "great weight because he treated [Plaintiff] and reviewed her diagnostic tests." Tr. at 18. The ALJ further found that Dr. Cooper's "opinion is consistent with the record as a whole." Tr. at 18. These findings are supported by substantial evidence. Further, the ALJ also relied on the opinion of Roderick Salach, D.O., which was rendered on March 17, 2011, about five months after the date last insured. Tr. at 18. In relevant part, Dr. Salach opined that Plaintiff "may have some mild physical impairment[;] however[,] based on what she's got[, I] doubt that she's totally disabled." Tr. at 272. The ALJ found Dr. Salach's opinion "is not that far removed from the time period at issue[,]" and it "sheds light on [Plaintiff's] response to surgery and other treatment, especially regarding her alleged hand pain and limitations." Tr. at 18. Plaintiff does not challenge the ALJ's reliance on this opinion, although she argues that it corroborates her subjective complaints of pain in her fingers and right arm. See Pl.'s Mem.

at 21-22.  The ALJ appropriately considered Dr. Salach's opinion, along with the other evidence, in determining Plaintiff's RFC during the relevant time period.

Finally, Plaintiff challenges the ALJ's discrediting of her testimony regarding pain. Id. at 17-22.  Regarding the subjective complaints of pain, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the degree alleged for the period prior to her date last insured of September 30, 2010." Tr. at 17-18.  Further, the ALJ stated that Plaintiff's "subjective allegations are contradicted by the objective findings." Tr. at 18.

Despite Plaintiff's contentions to the contrary, the ALJ's discrediting of her subjective complaints of pain during the relevant time period is supported by substantial evidence.  For examples, the ALJ noted that Plaintiff was "doing a lot of housecleaning in January 2010," "grooming her dog in July 2010," "helping her husband remove flooring in July 2010," and "babysitting" in late July 2010.  Tr. at 18 (citations omitted); see, e.g., Tr. at 319 (housecleaning), 307 (dog grooming), 304 (removing flooring), 299 (babysitting).  The ALJ further found "[t]here is no evidence that [Plaintiff] required around the clock assistance for daily living." Tr. at 18.  "On the contrary," found the ALJ, "the evidence of record supports the fact that she functioned quite independently." Tr. at 18.

In sum, the ALJ's RFC finding for the relevant time period is supported by substantial evidence in the record and need not be disturbed.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 29, 2017.

*/s/ James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record